PEOPLE v. BEECH.

1. WITNESSES—CHILDREN—COMPETENCY.

Under 3 Comp. Laws, § 10215, permitting a child under 10 years of age, after an examination satisfactory to the trial judge, to testify "on a promise to tell the truth," instead of on oath, it is enough that a child seven years old, after being asked six times whether she would promise to tell the truth, answered by a nod of her head.

2. SAME—RAPE.

The testimony of a girl seven years old, whom respondent was charged to have assaulted with intent to commit rape, should have been rejected, where she gave no testimony tending to establish guilt until a promise to speak had been elicited from her by giving her presents, and then contradicted herself in the most material matters.

3. SAME—HEARSAY.

The testimony of a mother as to what her boy, three years old, told her, on the day after respondent's alleged assault on her daughter, is inadmissible.

4. Same—Instructions.

 Where all of the testimony tending to establish an assault with intent to commit rape agreed as to the time when the offense was committed, and it was undisputed that certain third persons were present at the time stated, and that the assault was not committed while they were there, a request to charge that respondent should not be convicted on the theory that he committed the offense at any other time was erroneously refused.

Error to Ingham; Wiest, J. Submitted February 21, 1902. Decided March 4, 1902.

Samuel Beech was convicted of an assault with intent to commit the crime of rape, and sentenced to imprisonment in the State house of correction at Ionia for seven years. Reversed.

Respondent was convicted of assault with intent to commit the crime of rape upon a girl named Gracie Metz, 6 years old. The information charges three crimes, viz.: Rape, assault with intent to commit rape, and taking indecent liberties with a child under 14 years of age. According to the theory of the prosecution, the only ones present in the house at the time of the assault were Gracie and her two little brothers,—one 7 years, and the other 3 years and 1 month, old. There were three rooms in the house,—one the cooking and living room, about 16 feet square, and two bedrooms, opening off this room, with no doors or curtains. There was a kitchen, but it was not used in the winter. The occupants were the respondent, the three children, their mother, and her husband. Jesse and Gracie slept in the same bed with respondent for about two weeks, and Jesse slept with him during all the time they lived together. The prosecution gave testimony tending to show that the mother and father left home about 9 o'clock in the morning, leaving the respondent and the children at home; that they returned about 4 o'clock in the afternoon; that the respondent sent the two little boys, brothers of the prosecutrix, to a cubby-hole in

one of the bedrooms for a hammer; and that while they were gone the assault was committed. Jesse, who, the judge determined, could not comprehend an oath, and was not sworn, testified that, when he returned from the cubbyhole, respondent was committing the assault.

*William F. Dains* and *Smith & Hood*, for appellant.

*Arthur J. Tuttle*, Prosecuting Attorney, for the people.

GRANT, J. (*after stating the facts*). 1. The first question raised was upon the competency of Gracie Metz to testify. She was examined by the presiding judge privately and in open court, and was permitted to testify, under section 10215, 3 Comp. Laws. After being asked six times whether she would promise to tell the truth, she answered by a nod of her head. We think that the court was justified in permitting the prosecuting attorney to proceed with the examination. *People* v. *Walker*, 113 Mich. 369 (71 N. W. 641). But the question remains whether her testimony, as given, was competent, or should have been stricken out as wholly unworthy of any credit. A large part of the forenoon was spent by the prosecution with the witness in an almost fruitless attempt to elicit answers from her. She finally testified that she was lying on the bed on her back. She then refused for some time to answer any questions. Finally, when asked if respondent unbuttoned her drawers, she answered, "No." After some time this question was put to her: "Tell me whether or not your drawers were unbuttoned at the time. *A.* No; my drawers were not unbuttoned." This was about all that was elicited from the witness during the examination before the noon recess, notwithstanding both the judge and the prosecuting attorney used every endeavor to induce the witness to answer, while her mother sat by her, and the same questions were repeated many times. During the noon recess the prosecuting attorney purchased a doll and some candy for her, upon her promise that she would answer the questions put to her, and tell what she

knew about the transaction.    In the afternoon she testified
more readily, and then said that the assault was commit-
ted upon the floor of the bedroom, and that the respond-
ent unbuttoned her drawers, and, to use her language,
"played with my hind end."    Upon cross-examination
she absolutely refused to answer many questions, and on
re-direct examination flatly refused to answer questions
which were very material; and, when the question was
put to her by the prosecuting attorney, "Well, you said
you would tell what you knew about it if I would get
that doll, didn't you?" she answered, "I want more
candy; candy is good."    And, when asked repeatedly
why she would not answer the questions, the only reply
was, "Because."

We dislike to interfere with the discretion and ruling of
the circuit judge in a matter of this kind, but we cannot
resist the conclusion that such testimony is incompetent,
and ought not to be considered where a man is on trial for
a charge of such a heinous character that, if guilty, he
should be sent to State prison for life.    The only evidence
in this case upon which this respondent can be convicted
is given by two witnesses too young and ignorant to com-
prehend an oath, and one of whom gave no testimony
tending to establish guilt until a promise to speak was
elicited from her by giving her presents.    Their state-
ments do not agree; and, as already shown, the prin-
cipal witness repeatedly contradicts herself in the most
material matters.    We think the testimony of this witness
should have been eliminated from the case.    It is due to
the prosecuting attorney to say that he acted in the utmost
good faith, and with no desire to do anything approaching
impropriety, or to elicit anything but the truth.    This is
admitted by counsel for respondent.    But, notwithstand-
ing this, we think the testimony so obtained, and so con-
tradictory, is too unreliable to be used to convict a man of
so heinous a crime.

2. The name of the mother was not indorsed upon the
information as a witness.    When the people rested their

129 Mich.—40.

case, the respondent's attorneys, for some unexplained reason, demanded that the prosecution put the mother upon the stand. The prosecuting attorney did this, and examined her as his own witness. She was permitted to testify to what Gracie told her the next day about the details of the transaction; and not only that, but was also permitted to testify to what the boy 3 years and 1 month old said to his mother about it. The language the little boy used, if true, indicates the depravity, ignorance, and filth of those of this household. She testified that on the following day the little boy said to her, "Mamma, Sam was playing with little Gracie's hind end today." The testimony of the mother as to what the boy said was incompetent, and in a criminal case of this character this court will not stop to consider whether the objection to it conformed to the technical.rules of practice or not. Upon the question of the admissibility of the mother's testimony to what her daughter said to her on the following day we express no opinion.

3. Counsel for respondent preferred the following request:

"The undisputed evidence in this case shows that, if this offense was committed by the defendant at all, it was committed on the afternoon of January 26, 1901, before Silas Metz and Gracie's father and mother returned home, at between 4 and 5 o'clock in the evening, and while the undisputed proof shows that David Beech and Frank Metz were at the same house; and, if you have any reasonable doubt about its having been committed by the defendant at that time, you must acquit him. You must not convict him on the theory that he committed the offense at any other time, because there is no evidence tending to show that he committed the offense at any other time."

This was refused, and evidently upon the theory that there was evidence from which the jury might infer that the crime was committed in the forenoon, rather than in the afternoon. It is admitted that the witnesses Beech and Metz were present all the afternoon, and were there when Mr. and Mrs. Metz returned. Inasmuch as a new

trial is ordered, it is not necessary to examine the record to determine the question of fact involved in the request. We mention it only in view of a new trial. If the only evidence was that the crime was committed in the after-noon, then the request should have been given; for it is manifest that it was not committed while the witnesses Beech and Metz were there. This question may become important upon a new trial.

Conviction reversed, and new trial ordered.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., con-curred. LONG, J., did not sit.